(9 Misc. Rep. 310.)

### EMERY v. NEW YORK, L. E. & W. R. CO. et al.[1]

(Supreme Court, Special Term, New York County. June, 1894.)

1. INJUNCTION—RESTRAINING ISSUE OF NEW BONDS IN EXCHANGE FOR OLD ONES.

The holder of bonds secured by a trust mortgage cannot enjoin the execution of a new trust mortgage, and the issue of new bonds collateral thereto to the holders of old bonds, who consent, in exchange therefor, where the new mortgage and bonds will not impair the security of the holders who do not consent to the new arrangement.

2. SAME—AGREEMENT NOT TO FORECLOSE.

One who accepts bonds secured by a mortgage providing that the same shall not be foreclosed, without a request therefor by a majority of the bondholders thereunder, cannot restrain the making of an ·agreement by such majority that they will not request such foreclosure.

Action by John J. Emery against the New York, Lake Erie & Western Railroad Company and the Farmers' Loan & Trust Company. Plaintiff moves for an injunction. Denied.

James C. Carter, Charles C. Beaman, and Charles L. Atterbury, for plaintiff.

E. J. Phelps, F. L. Stetson, and F. B. Jennings, for defendant New York, L. E. & W. R. Co.

H. B. Turner, for defendant Farmers' Loan & Trust Co.

INGRAHAM, J. The relief demanded by the complaint is that the defendants be enjoined and restrained from recording a certain mortgage executed by the defendant railroad company to the defendant trust company as trustee, and from the execution, circulation, issue, sale, or delivery of any bond or bonds to be secured thereby, with a temporary injunction before trial; and, to entitle plaintiff to any injunction at this time, it must appear, from the facts shown before me, that plaintiff will be entitled to a final judgment for the relief demanded in the complaint. The papers are quite voluminous, but the question is a narrow one.

The New York, Lake Erie & Western Railroad Company issued certain of its bonds, and, to secure their payment, executed a mortgage, known as the "Second Consolidated Mortgage," to the defendant trust company, as trustee, and the plaintiff is the holder of $40,000 of the bonds secured by that mortgage. The railroad company having become insolvent, receivers were appointed, who are now in possession of the property; and the company made default in the payment of its coupons upon the bonds before mentioned, which became due on the 1st of December, 1893, and the 1st of June, 1894, whereupon a scheme for the reorganization of the company was devised, and in pursuance of that scheme it was proposed to make a new mortgage to take the place of the second consolidated mortgage, before mentioned, and to substitute bonds secured by this new mortgage for the bonds secured by the old second consolidated mortgage, when the holders of such bonds would consent; and in pursuance of this scheme a new mortgage has been executed by the Erie Railroad Company to the trust company, as trustee, and it is the issuing of bonds under this new mortgage that the

[1] Appeal dismissed. See 30 N. Y. Supp. 1131, mem.

plaintiff seeks to restrain.    A very large majority of the holders of
the bonds under the second consolidated mortgage have consented
to the exchange, some thirty-one out of thirty-eight millions having
so consented.    The plaintiff has refused to consent, and seeks to
restrain those bondholders who desire the exchange from receiving
the new bonds, and the defendants from delivering to such bond-
holders the new bonds in exchange for the old.

While it is clear that there are certain obligations resting upon
the majority, be they stockholders or bondholders, to refrain from
doing any act, as such majority, that will infringe the legal rights
of the minority, and that a court of equity will enforce and protect
the rights of the minority, either by affirmative or injunctive relief,
still, when the holder of a very small number of bonds or shares of
stock seeks to enjoin a very large majority of the stockholders or
bondholders from carrying out a plan which such majority deem to
be for their benefit, I think the court should not interfere, unless it
plainly appears that some legal right of the minority is infringed
or jeopardized, and plaintiff must show that the proposed action
which he seeks to restrain will violate some substantial right which
he has acquired by reason of his ownership of the bonds in ques-
tion.    There is not the slightest evidence to show that either of the
defendants has done any act to force the plaintiff to join in this
scheme, nor does the new mortgage, on its face, affect the right of
any bondholder secured by the old mortgage.    The plaintiff is at
liberty to refuse to surrender his bonds; to wait until the mortgage
can, by its terms, be foreclosed, and then take such proceedings to
enforce his bonds as he could have taken had not this new mort-
gage been executed.    He still has the same legal rights, and will
continue to have them, whether this new consolidated mortgage be
recorded, and bonds issued under it, or not.    It is not proposed
to in any way destroy the mortgage which secures his bonds, or to
dissipate the property covered by such mortgage.    On the contrary,
if the scheme which includes the substitution of the new bonds for
the old is carried out, much property will come into the hands of
the trustee, to which the plaintiff can claim his mortgage attached,
which has never been in the possession of the trustee prior to this
time.

The first of the two principal grounds upon which the plaintiff
claims the right to an injunction is that by the new mortgage the
railroad company proposes to transfer to the trust company, as trus-
tee of that mortgage, a large amount of corporate stock, etc., which
forms a portion of the property included in the old second consoli-
dated mortgage, in such manner and to such extent that the same
are freed and discharged of the lien of the old second consolidated
mortgage.    But, after a moment's consideration, I think it is ap-
parent that nothing that the defendants have done or propose to do
can possibly take away from the trustee under the old mortgage any
right to appropriate any of this security to the payment of the plain-
tiff's bonds.    Whatever property is covered by the old mortgage is
subject to such mortgage, notwithstanding any disposition which
the mortgagor can make of it, except so far as a title may be ac-

quired by a bona fide holder for value. But in this case the trans-feree or mortgagee is the same corporation that is mortgagee for the benefit of the old bonds, and it receives all of these securities with full knowledge of the rights that the old bondholder has, and the trustee will be clearly responsible to the holders of the bonds secured by the old mortgage, if, when it obtained possession of these securities, it did any act that would tend to defeat or impair the lien of the old mortgage upon the property mortgaged; and the fact that the new bonds issued under the mortgage are negotiable could not, under well-settled rules of law, give to a transferee of such bonds any greater right, as to the property mortgaged, than was given to the trustee under the mortgage. The negotiable character of the bonds issued under the new mortgage would not entitle their holder to any right which he did not acquire by the mortgage itself. Whether or not the trust company, as trustee of both mortgages, occupies an inconsistent position, it is not necessary for me to de-termine. The court has ample power to remove the trust company, as trustee, upon the application of any of the cestuis que trustent, and to appoint a new trustee in its place; and, if the plaintiff con-siders himself injured because the same corporation is trustee under both mortgages, he can apply to have the trustee under his mort-gage removed, and a new one appointed, who will protect his in-terest; and the trust company, as trustee of either mortgage, is at all times under the control of the court, and at all times respon-sible for any wrongful act that will tend to injure the plaintiff. There were intimations upon the argument, as in the brief submit-ted by plaintiff, that in some way, not clearly defined, the market value of the plaintiff's bonds had been affected by this act of the defendants. But if that were so it would not, I think, give to plain-tiff a cause of action. As these parties are simply carrying into effect a reorganization assented to by a very large majority of the bondholders, it is evident that these bondholders, by assenting to the reorganization, do not consider that it is an injury to their bonds. But even if it were, unless the act proposed is illegal, and beyond the power of the defendants to do, plaintiff would not be en-titled to relief.

The second ground relied on by the plaintiff is that under this second mortgage a majority of the bonds are deposited with the trust company as trustee under the new mortgage, and that by a covenant in the new mortgage the trustee agrees that it, as the holder of said several bonds, shall be entitled to enforce said bonds, and the several mortgages or other securities therefor, whenever and in such manner as the trustee may deem necessary or proper in order to protect its interest as holder of said bonds, and the interest of the company and of the bondholders hereunder, as against the holders of similar bonds which shall not have been pledged under this indenture or otherwise, and that in consequence of this covenant, and the owner-ship under it of a majority of the bonds secured by the old mortgage, the trustee would be bound to refuse its consent to foreclose, and that thus the plaintiff, or all the holders of bonds who did not exchange for the new bonds, would be forever prevented from enforcing the

mortgage, as, by the terms of the old mortgage, before there could be a foreclosure, the holders of a majority of the bonds must request the trustee to foreclose.    At first I was much impressed with this objection, and it did seem as though a majority of the bondholders had met together, and agreed that they would not foreclose the mortgage secured by their bonds, and thus prevent plaintiff from ever obtaining the application of the mortgaged premises to the payment of his bonds; and it was, in substance, such an agreement as that that the court was asked to enjoin.    But still assuming such to be the effect of this new arrangement, is any legal right of the plaintiff affected?    He bought his bonds secured by the mortgage, which contained a provision subjecting him to the will of a majority, and providing that the mortgage should not be foreclosed until a majority requested its foreclosure.    What legal right, then, has he to come in and say that the majority shall not agree that they will not request a foreclosure of the mortgage?    It may well be that a court of equity would say that it would not enforce such an agreement, or that, if plaintiff applies to the court to enforce this mortgage, alleging that the lack of a request by the majority was in consequence of this agreement or the ownership of the bonds by the trustee under this second mortgage, the court would give the plaintiff relief.    But here we have a simple proposition that a majority of the bondholders do not want the mortgage foreclosed, and agree, for a certain consideration, that they will place the bonds in such a position that it will not be foreclosed; and I cannot see that that action of the majority violates any legal right of the minority, or justifies a court of equity in enjoining the majority from acquiring what they consider to be an advantage by the execution of the agreement.    To grant this injunction would be, in substance, to allow the wishes of the holder of $40,000 of these bonds to control the holders of the rest of the $38,000,000, and that in a case where the courts have ample power, in a proper proceeding, at any time, to protect the plaintiff, and enforce every right of his, notwithstanding any agreement that may be made between the holders of a majority of the bonds, the mortgagor, and the mortgagee; and I can see no legal right of the plaintiff that has been, or is to be, infringed or impaired, and I do not think that the plaintiff is entitled to any injunction.

Having given to the questions presented all the consideration that I have been able to, I am entirely satisfied that no cause of action is alleged, and that the plaintiff is not entitled to any relief.    The motion for an injunction is therefore denied, with costs.    Motion denied, with costs.